IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

CHARLES BOHON
27234 Bagley Road
Olmsted Falls, OH 44138

           Plaintiff,

   v.

CITIMORTGAGE, INC.,
c/o CT Corp. System, Statutory Agent
1300 East 9th St.
Cleveland, OH 44114

and

REIMER LAW, CO.
fka Reimer, Arnovitz, Chernek &
Jeffrey Co., LPA
c/o Dennis Reimer, Statutory Agent
30455 Solon Rd.
Solon, OH 44139

           Defendants.

**COMPLAINT**

**With Jury Demand**

Now comes Plaintiff, Charles Bohon, by and through counsel, and hereby states as follows for his Complaint against Defendants CitiMortgage, Inc. and Reimer Law, Co.

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Charles Bohon ("Plaintiff") is the owner of residential real property, located at and commonly known as 27234 Bagley Road, Olmsted Falls, OH 44138 (the "Property") which he has occupied as his primary principal residence at all times relevant to this Complaint.

2.    Defendant CitiMortgage, Inc. ("Citi") is the current servicer of a Note

executed by Plaintiff (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage") (collectively, the "Loan").

3.      Defendant Citi ("Citi") has been the servicer of the Loan since at least August 14, 2009.

4.      Citi services the Loan on behalf of the previous and current owners of the Loan.

5.      Defendant Reimer Law, Co., formerly doing business as Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. until January 31, 2017 ("Reimer") is a limited liability company formed and organized in the state of Ohio and whose members practice law in Ohio. At all times relevant, Reimer was the attorney for Citi on behalf of the previous and current owners of the Loan.

6.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* (RESPA). This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, *et seq.* of Regulation X.

7.      This action also arises out of defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

8.      This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

2

9.     Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Plaintiff resides and the Property is located in Ohio.

<u>SUMMARY OF CLAIMS</u>

10.     Plaintiff restates and incorporates all of his statements and allegations contained in paragraphs 1 through 9 in their entirety, as if fully rewritten herein.

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the Mortgage Servicing Rules under the Real Estate Settlement Procedures Act, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

14.     Citi is subject to the aforesaid regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

15.     Plaintiff asserts a claim for relief against Citi for breaches of the specific rules under Regulation X as set forth, *infra*.

16.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

3

17.    Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. §1692a.

18.    Citi is a debt collector, Plaintiff is a consumer, and the Loan is a debt, as such terms are defined pursuant to the FDCPA. Plaintiff asserts a private right of action under the FDCPA pursuant to 15 U.S.C. §1692k for Citi's conduct in connection with collection of the Loan and he is entitled to recover actual damages, statutory damages, costs and attorneys' fees.

## BACKGROUND FACTS

19.    Plaintiff restates and incorporates all of his statements and allegations contained in paragraphs 1 through 18 in their entirety, as if fully rewritten herein.

20.    On or around April 6, 2016, Plaintiff submitted a loss mitigation application (the "Application") to Citi in order to be reviewed for any and all loss mitigation opportunities available. Proof of the submission of this loan modification application is attached as *Exhibit 1*.

21.    On or about April 7, 2016, Citi sent correspondence to Plaintiff, by and through The Dann Law Firm Co., L.P.A. ("DLF"), counsel for Plaintiff regarding the Loan, acknowledging that DLF represented the Plaintiff regarding the Loan and that all written and verbal communication would be forwarded to DLF. A copy of this correspondence is attached as *Exhibit 2*.

22.    On or about May 5, 2016, Plaintiff, by and through DLF, sent correspondence to Citi captioned "Notice of Error under 12 C.F.R. §1024.35(b)(11) for violation of §1024.41(b)(2)(i)(B)" ("NOE #1") via Certified U.S. Mail [Receipt No. 7016

4

0340 0000 8839 7950]. A copy of NOE #1 is attached as *Exhibit 3*.

23.     Plaintiff sent NOE #1 to the address Citi designated for the receipt of any notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 3*.

24.     Citi received NOE #1 on or about May 10, 2016. A copy of the Tracking Information for NOE #1, obtained from the website for the United States Postal Service (USPS) (www.usps.com), is attached as *Exhibit 4.*

25.     Plaintiff, by and through NOE #1, alleged that Citi committed one (1) error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to send written acknowledgment to Plaintiff within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of Citi's receipt of the Application acknowledging Citi's receipt as such and stating whether Citi has determined that the loss mitigation application is complete as required pursuant to 12 C.F.R. §1024.41(b)(2)(i)(B). See *Exhibit 3*.

26.     On or about May 11, 2016, Anthony Herman, a Dedicated Loan Specialist for Citi, left a message for DLF to contact Mr. Herman regarding Plaintiff. A copy of the May 11, 2016 message is attached as *Exhibit 5*.

27.     On or about May 17, 2016, Citi sent Plaintiff correspondence in response to NOE #1 (the "Response to NOE #1"). A copy of the Response to NOE #1 is attached as *Exhibit 6.*

28.     Enclosed with the Response to NOE #1 were:

    (a) Correspondence dated April 8, 2016 acknowledging receipt of documents provided on April 6, 2016;

    (b) Correspondence dated April 8, 2016 acknowledging that Plaintiff's

5

Application was complete;

(c) Correspondence dated April 11, 2016 acknowledging that Plaintiff's Application was complete; and,

(d) Correspondence dated April 12, 2016 requesting additional documents.

See *Exhibit 2*; *Exhibit 6*.

29.    All correspondence attached to the Response to NOE #1 was addressed to the Borrower at the Property despite Citi acknowledging that DLF represented the Plaintiff regarding the Loan and that all written and verbal communication would be forwarded to DLF. See *Exhibit 2*; *Exhibit 6*.

30.    On or about May 17, 2016, Plaintiff, by and through Whitney Horton of DLF, returned Mr. Herman's phone call.

31.    Mary, an employee of Citi identified as Agent No. 96475, informed Ms. Horton that in order for Citi to continue their review of the Application, Citi required:

(a) Two (2) additional pay stubs;

(b) An updated 4506-T Form (as the one provided was an "old" form); and

(c) The Award Letter associated with income deposited into Plaintiff's bank account.

32.    Ms. Horton of DLF requested that Citi provide a copy of the updated 4506-T Form that Citi now required.

33.    Mary of Citi stated that she would request that the Dedicated Loan Specialist email a copy to Plaintiff.

34.    Mary of Citi did not know whether written notice had been sent to Plaintiff regarding the additional documents required for the Application

35.     On or about May 17, 2016 Mr. Herman of Citi sent correspondence to Plaintiff, by and through DLF, ("Request #1) indicating that in order to resubmit the file back to the underwriter Plaintiff would need to provide the following documents:

(a) 4506-T Form;
(b) Two most recent paystubs;
(c) Two (2) most recent bank statements; and.
(d) An Award Letter.

A copy of Request #1 is attached as *Exhibit 7.*

36.     On or about June 9, 2016, twenty-three days (23) after DLF's last contact with Citi, Sandra, an employee of Citi identified as Agent No. RE87818, left a message with DLF in order to confirm attorney representation. A copy of the June 9, 2016 message is attached as *Exhibit 8.*

37.     On or about June 17, 2016, Plaintiff submitted any and all documents requested by and through the May 17, 2016 correspondence (the "Response to Request #1"). A copy of the Response to Request #1 is attached as *Exhibit 9.*

38.     On or about June 29, 2016, Attorney Bill Behrens of DLF received a phone call from Sandra of Citi wherein Attorney Behrens confirmed that DLF still represented the Plaintiff and Sandra in turn confirmed that Citi had received the Response to Request #1. See *Exhibit 9.*

39.     At no point following June 17, 2016 and prior to July 8, 2016, did Citi did send, nor did Plaintiff receive any correspondence requesting additional, missing, corrective, or supplemental information or documentation regarding the Application. See *Exhibit 9.*

7

40.     On or about July 8, 2016, Citi, by and through Reimer, initiated foreclosure proceedings against Plaintiff in the case captioned or otherwise identified as *U.S. Bank N.A. as Trustee for Citicorp Residential Mortgage Securities, Inc. Remic Series 2006-02-RemicPass-Through Certificates, Series 2006-02 v. Charles Bohon,* et al., in the Court of Common Pleas for Cuyahoga County, Ohio, and assigned Case No. CV-16-865911 (the "Foreclosure"), despite the fact that CitiMortage was in possession of a facially complete loan modification application. A copy of the docket in the Foreclosure obtained from the website for the Cuyahoga County Clerk of Courts is attached as *Exhibit 10.*

41.     On or about August 17, 2016, a Streamlined Loan Modification Offer pursuant to the Home Affordable Modification Program (HAMP) dated August 15, 2016 ("Streamlined HAMP #1"), was left at the front door of the Property despite the fact that Citi was on notice that Mr. Bohon was being represented by DLF. A copy of the Tracking Information for the Streamlined HAMP #1, obtained from the FedEx's website (www.fedex.com), is attached as *Exhibit 11; see also, Exhibit 2.*

42.     Plaintiff, however, was away from the Property due to his job from August 7, 2016 through October 14, 2016, and when Plaintiff returned to the Property, he was unable to locate the Streamlined HAMP #1. A letter from Plaintiff's employer stating that he was traveling for work at the time Streamlined HAMP #1 was delivered is attached as *Exhibit 12.*

8

43. On or about September 1, 2016, Plaintiff, by and through DLF, sent correspondence notifying Citi of an alleged error on the Loan pursuant to 12 C.F.R. §1024.35(b)(11) for Citi's violation of §1024.41(c)(1) ("NOE #2") via Certified U.S. Mail [Receipt No. 7016 0340 0000 9159 6890]. A copy of NOE #2 is attached as *Exhibit 13*.

44. Plaintiff sent NOE #2 to the address Citi designated for the receipt of any notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 13*.

45. Citi received NOE #2 on or about September 6, 2016. A copy of the Tracking Information for NOE #2, obtained from the USPS's website (www.usps.com), is attached as *Exhibit 14*.

46. By and through NOE #2, Plaintiff alleged that Citi committed one (1) error pursuant to 12 C.F.R. §1024.35(b)(11) in failing to evaluate the Application for all loss mitigation options available to Plaintiff and provide written notice stating which loss mitigation options, if any, Citi would offer to Plaintiff in violation of 12 C.F.R. §1024.41(c)(1). See *Exhibit 13*.

47. On or about September 16, 2016, Plaintiff, by and through DLF, filed an Answer to the Foreclosure. See *Exhibit 10*.

48. On or about September 19, 2016, the foreclosure magistrate referred the Foreclosure to mediation. See *Exhibit 10*.

49. On or about September 19, 2016. Citi, by and through Teri Bass of Reimer, provided a loss mitigation financial packet via email correspondence pursuant to the Foreclosure's mediation referral. A copy of such correspondence is attached as *Exhibit 15*.

9

50.     On or about September 26, 2016, Citi, by and through Jonathan Gibby of Reimer, sent email correspondence to Plaintiff, by and through DLF, requesting additional documents for the Application ("Request #2"). A copy of Request #2 is attached as *Exhibit 16.*

51.     On or about September 29, 2016, Citi sent Plaintiff, by and through DLF, correspondence in response to NOE #2 (the "Response to NOE #2). A copy of the Response to NOE #2 is attached as *Exhibit 17.*

52.     Enclosed with the Response to NOE #2 provided was:

    (a) Correspondence dated June 29, 2016 acknowledging receipt of documents provided on June 17, 2016; and,

    (b) A copy of Streamlined HAMP #1.

See *Exhibit 9; Exhibit 17.*

53.     Due to Plaintiff being out of town from August 7, 2016 through October 14, 2016, DLF's receipt of the Response to NOE #2 was the first point at which Plaintiff was aware that Citi had offered the Streamlined HAMP #1 to Plaintiff. See *Exhibit 12; Exhibit 17*

54.     The Response to NOE #2 failed to actually address the error alleged by and through NOE #2. See *Exhibit 17.*

55.     Rather than properly responding to the error alleged by and through NOE #2, Citi, by and through the Response to NOE #2, merely stated that "[the Plaintiff] was sent an approval for a trial period plan under [HAMP]", but Streamlined HAMP #1 was not an offer based on a review of the Application as therefore was irrelevant for the purposes of Citi's compliance with 12 C.F.R. §1024.41

and the error alleged by and through NOE #2, as is clear from the face of Streamlined HAMP #1 which indicates that Plaintiff "must submit an Initial Package no later than September 14, 2016." See *Exhibit 17*.

56.     Citi does not explain by and through the Response to NOE # 2 as to why Citi did not provide a response to the Application on or before July 17, 2016 or otherwise explain the contradiction in Streamlined HAMP #1 advising Plaintiff to submit an "Initial Package" by September 14, 2016 when the Application had been pending since June 17, 2016. See *Exhibit 11*; *Exhibit 17*.

57.     On or about September 30, 2016, Citi, by and through Mr. Gibby of Reimer, sent email correspondence to Plaintiff, by and through DLF, providing a copy of Streamlined HAMP #1. A copy of the September 26, 2016 correspondence is attached as *Exhibit 18*.

58.     On or about September 30, 2016, Plaintiff, by and through Ms. Horton of DLF, notified Citi, by and through Mr. Gibby of Reimer, that Plaintiff had not received Streamlined HAMP #1 prior to September 30, 2016 and that Plaintiff would make the first payment required by the Streamlined HAMP #1 as soon as the funds became available. A copy of the September 30, 2016 correspondence is attached as *Exhibit 19*; see also, *Exhibit 12*.

59.     On or about October 12, 2016, Citi, by and through Mr. Gibby of Reimer, sent email correspondence to Plaintiff advising that Citi could not extend the first payment date for the Streamlined HAMP #1 because the offer expired due to Plaintiff's failure to timely remit payment further noting that the tracking

information indicated that the Plaintiff received the Streamlined HAMP #1 on August 17, 2016. A copy of the October 12, 2016 correspondence is attached as *Exhibit 20*.

60.     Plaintiff remitted payment to Citi in a good faith effort to accept Streamlined HAMP #1 and Citi processed the same on or about October 18, 2016. A copy of the mortgage statement showing the processed payment is attached as *Exhibit 21.*

61.     On October 21, 2016, Plaintiff, by and through Ms. Horton of DLF, submitted any and all documents requested by and through Request #2 (the "Response to Request #2"). A copy of the Response to Request #2 is attached as *Exhibit 22.*

62.     On or about October 24, 2016, Plaintiff, by and through DLF, sent correspondence notifying Citi of an alleged error pursuant to 12 C.F.R. §1024.35(b)(11) for Citi's violation of §1024.35(e) ("NOE #3") via Certified U.S. Mail [Receipt No. 7016 1970 0000 5068 8644]. A copy of NOE #3 is attached as *Exhibit 23*.

63.     Plaintiff sent NOE #3 to the address Citi designated for the receipt of any notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 23*.

64.     Plaintiff, by and through NOE #3, alleged that Citi committed an error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to conduct a reasonable investigation of and properly respond to NOE #2 in violation of 12 C.F.R. § 1024.35(e). See *Exhibit 23*.

65.     On or about October 26, 2016, Citi sent correspondence to the Plaintiff

12

acknowledging the Application was complete. A copy of the October 26, 2016 correspondence is attached as *Exhibit 24*.

66.     The October 26, 2016 correspondence was sent to the Property. See *Exhibit 24*.

67.     Citi received NOE #3 on or about October 28, 2016. A copy of the Tracking Information for NOE #3, obtained from the USPS's website ([www.usps.com](www.usps.com)), is attached as *Exhibit 25*.

68.     On or about October 31, 2016, Citi sent another Streamlined HAMP Offer ("Streamlined HAMP #2") directly to Plaintiff at the Property despite Citi's knowledge of the situation concerning DLF's representation of Plaintiff and the complications surrounding the delivery of the Streamlined HAMP #1. A copy of Streamlined HAMP #2 is attached as *Exhibit 26*.

69.     On or about November 1, 2016, Plaintiff sent Cease and Desist Letter to Citi, by and through Attorney Darryl Gormley of Reimer. A copy of the November 1, 2016 correspondence is attached as *Exhibit 27*.

70.     On or about November 2, 2016, Citi sent correspondence to Plaintiff requesting additional documents in relation to the Application ("Request #3"). A copy of Request #3 is attached as *Exhibit 28*.

71.     On or about November 7, 2016, Attorney Gormley of Reimer sent correspondence to Plaintiff, by and through DLF, requesting additional documents in relation to the Application which mirrored the requests contained in Request #3. A copy of the November 7, 2016 correspondence is attached as *Exhibit 29*.

72.     On or about November 11, 2016, Citi sent Plaintiff correspondence in response to NOE #3 (the "Response to NOE #3"). A copy of the Response to NOE #3 is attached as *Exhibit 30*.

73.     Enclosed with the Response to NOE #3 was:

(a) Correspondence dated October 24, 2016 acknowledging receipt of the Response to Request #2;

(b) A copy of Streamlined HAMP #2. See *Exhibit 30*.

See *Exhibit 30*.

74.     The Response to NOE #3 failed to address the error alleged by and through NOE #3 merely stating that "as of October 24, 2016, [the Plaintiff's] file was submitted for underwriter review." See *Exhibit 30*.

75.     Prior to Citi sending the Response to NOE #3, Citi did not send nor did Plaintiff receive any written acknowledgment of Citi's receipt of NOE #3.

76.     On or about November 15, 2016, Plaintiff, by and through Ms. Horton of DLF, advised Citi of his intent to accept Streamlined HAMP #2. A copy of the November 15, 2016 correspondence is attached as *Exhibit 31*.

77.     On November 17, 2016, Plaintiff, by and through Ms. Horton of DLF, submitted any and all documents requested by and through Request #3 (the "Response to Request #3"). A copy of the Response to Request #3 is attached as *Exhibit 32*; see also, *Exhibit 28*, *Exhibit 29*.

14

78.     On or about December 8, 2016, Citi, by and through Mr. Gibby of Reimer, provided a written determination of any and all loss mitigation options to Plaintiff containing an offer for a loan modification pursuant to HAMP Tier 2 (the "HAMP Tier 2 Offer"). A copy of the December 8, 2016 correspondence containing the HAMP Tier 2 Offer is attached as *Exhibit 33*.

79.     On or about December 12, 2016, Attorney Darryl Gormley of Reimer, advised Plaintiff that the HAMP Tier 2 Offer would not be generated due to Streamlined HAMP #2 being the better offer. A copy of the December 12, 2016 correspondence is attached as *Exhibit 34*.

## STATEMENT OF DAMAGES

80.     Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 79 in their entirety, as if fully rewritten.

81.     The actions of Citi and Reimer, in their respective handling of the loss mitigation process, specifically including but not limited to such actions as initiating the Foreclosure despite the submission of the Application, in failing to exercise diligence to obtain information and documents to complete the Application, and failing to timely review the Application, have caused Plaintiff to incur legal expenses and other pecuniary damages by being forced to defend against the Foreclosure that should not have been filed prior to the review of the Application and to seek legal help to attempt to ensure that Citi would review the Application, a right to Plaintiff is entitled pursuant to Regulation X to RESPA, and, once Plaintiff had exercised all

15

reasonable options at their disposal, the filing of the instant proceedings.

82.     The actions of Citi and Reimer have caused the loss mitigation process to last for a significant period longer than it would have had they acted properly.

83.     As such, the actions of Citi and Reimer have caused Plaintiff to remain in a default status on his loan for a significantly longer period of time than Plaintiff would have had Citi and Reimer not acted inappropriately which has caused Plaintiff to suffer actual damages including, but not limited to continued damage to Plaintiff's credit and a delay in the rehabilitation of credit.

84.     Throughout this entire ordeal, Plaintiff has merely wanted to have his Citi review the loss mitigation application in a timely manner, something to which Plaintiff is entitled under federal law, so that Plaintiff could obtain a loan modification, get out of default on the Loan, resume making timely, proper payments on the Loan to Citi a, begin to rehabilitate his credit, and most importantly to remain in the Property, his home.

85.     The wrongful and willful actions of Citi and Reimer have caused Plaintiff to suffer great emotional distress driven by the fear that he might lose and be forced to leave the Property, his home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

86.     Additionally, based upon information on hand and calculations based upon such, had Citi reviewed the Application in July 2016 as they would have had they acted properly, Plaintiff would have qualified for a modification under HAMP Tier 2 that would have had roughly $12,000.00 less capitalized into the modified

16

principal balance of the Loan than that which has been capitalized into balance under Streamlined HAMP #2 which has the net effect of adding nearly $30.00 onto Plaintiff's monthly payment on the Loan.

87.     At the time of the filing of this Complaint, Citi has had more than Four Thousand Six Hundred (4,600) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (www.consumerfinance.gov/complaintdatabase/).

## COUNT ONE: AGAINST CITI
## VIOLATION OF 12 C.F.R. §1024.41(f)

### (Violation of prohibition on foreclosure referral with facially complete loss mitigation application pending review)

88.     Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

89.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

90.     12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

17

91.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

92.     12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

93.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

94.     12 C.F.R. §1024.41(f)(2) states that if a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, *a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process* unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by

18

the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

95.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(f)(1)(i) provides that:

> Where foreclosure procedure requires a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be filed with a court or other judicial body to commence the action or proceeding (e.g., a complaint, petition, order to docket, or notice of hearing).

96.     Plaintiff submitted the Application to Citi on or about April 6, 2016. See *Exhibit 1.*

97.     On or about May 17, 2016, Mr. Herman of Citi sent Request #1 to Plaintiff requesting additional, missing, corrective, and/or supplemental information and documents regarding the Application, by and through DLF. See *Exhibit 7.*

98.     On or about June 17, 2016, Plaintiff submitted the Response to Request #1 which contained any and all of the information and documentation requested by and through Request #1. See *Exhibit 7, Exhibit 9.*

99.     On or about June 29, 2016, Attorney Bill Behrens of DLF received a phone call from Sandra of Citi who notified Attorney Behrens that Citi had received the Response to Request #1.

100.    Citi was in receipt of any and all information and documentation requested by and through Request #1 as of June 17, 2016, the Application was facially complete, if not wholly complete, as of such date. See *Exhibit 7, Exhibit 9.*

101.   At no point following June 17, 2016 and prior to July 8, 2016, did Citi did send, nor did Plaintiff receive any correspondence requesting additional, missing, corrective, or supplemental information or documentation regarding the Application. See *Exhibit 9*

102.   No foreclosure sale of the Property was scheduled as of June 17, 2016. See *Exhibit 10*.

103.   On or about July 8, 2016, despite Citi being in possession the Application which was facially complete or complete, Citi, by and through Reimer, initiated the Foreclosure. See *Exhibit 10*.

104.   At no point between June 17, 2016 and July 8, 2016 did:

(a) Citi send notice stating that that Plaintiff was not eligible for any loss mitigation options;

(b) Plaintiff reject all loss mitigation options offered by Citi (as no such options were offered during this period of time); or,

(c) Plaintiff fail to perform under an agreement on a loss mitigation option (as no such options were offered during this period of time).

105.   Citi's actions, in initiating the Foreclosure, by and through Reimer, while Citi was in possession of a facially complete or complete loss mitigation application, constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(f).

106.     Citi's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

107.     As a result of Citi's actions, Citi is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT TWO: AGAINST CITI**
**VIOLATION OF 12 C.F.R. § 1024.41(c)**

**(Failure to perform a review of a borrower's eligibility for any and all loss mitigation options available to a borrower within thirty (30) days of receipt of a complete loss mitigation application)**

108.     Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

109.     12 C.F.R. §1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

110.     12 C.F.R. §1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer _must_: (i) Evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

21

111.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

112.    Plaintiff submitted the Application to Citi on or about April 6, 2016. See *Exhibit 1*.

113.    On or about May 17, 2016, Mr. Herman of Citi sent Request #1 to Plaintiff requesting additional, missing, corrective, and/or supplemental information and documents regarding the Application, by and through DLF. See *Exhibit 7*.

114.    On or about June 17, 2016, Plaintiff submitted the Response to Request #1 which contained any and all of the information and documentation requested by and through Request #1. See *Exhibit 7*, *Exhibit 9*.

115.    On or about June 29, 2016, Attorney Bill Behrens of DLF received a phone call from Sandra of Citi who notified Attorney Behrens that Citi had received the Response to Request #1.

116.    Citi was in receipt of any and all information and documentation requested by and through Request #1 as of June 17, 2016. See *Exhibit 7*, *Exhibit 9*.

117.    At no point following June 17, 2016 until September 26, 2016 when Citi, by and through by and through Jonathan Gibby of Reimer, sent Request #2, did Citi request any missing, corrective, additional, or supplemental information from Plaintiff regarding the Application that had not previously been provided to and their receipt acknowledged by Citi. See *Exhibit 9; Exhibit 15*.

22

118.    As of June 17, 2016, Plaintiff had submitted any and all documentation requested by Citi in order to constitute a complete loss mitigation application. See *Exhibit 9*.

119.    Citi was in possession of a complete loss mitigation application as of June 17, 2016.

120.    There was no foreclosure sale of the Property scheduled as of June 17, 2016. See *Exhibit 10*.

121.    As such, pursuant to 12 C.F.R. § 1024.41(c)(1), Citi was required, within thirty (30) days of June 17, 2016, to: (i) Evaluate Plaintiff's loss mitigation application for any and all loss mitigation options available to Plaintiff; and, (ii) provide written notice to Plaintiff "stating [Citi's] determination of which loss mitigation options, if any, it will offer to [Plaintiff] on behalf of the owner or assignee of the mortgage."

122.    Citi failed to perform any such review of the Application and notify Plaintiff of the results thereof within thirty (30) days of June 17, 2016.

123.    In fact, rather than evaluate the Application for any and all loss mitigation options available to Plaintiff, Citi, by and through Reimer, initiated the Foreclosure on or about July 8, 2015. See *Exhibit 10*.

124.    Citi's failure to review Plaintiff's complete loss mitigation application within thirty (30) days of receipt constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(c).

125.    Citi's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

23

126.    As a result of Citi's actions, Citi is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

<u>COUNT THREE: AGAINST CITI</u>
<u>VIOLATION OF 12 C.F.R. § 1024.41(b)</u>

**(Failure to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application)**

127.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

128.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

129.    12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

130.    The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See §1024.41(c)(2)(iv) addressing facially complete applications.

131.    Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that:

> If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application.

132.    In regards to Count Two, *supra*, if the trier of fact determines that the Application was not complete, as such term is defined pursuant to 12 C.F.R. § 1024.41(c)(1), then as a theory of alternative liability, it is clear that Citi failed to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Application

133.    Plaintiff submitted the Application to Citi on or about April 6, 2016. See *Exhibit 1*.

134.    On or about May 17, 2016, Mr. Herman of Citi sent Request #1 to Plaintiff requesting additional, missing, corrective, and/or supplemental information and documents regarding the Application, by and through DLF. See *Exhibit 7*.

135.    On or about June 17, 2016, Plaintiff submitted the Response to Request #1 which contained any and all of the information and documentation requested by and through Request #1. See *Exhibit 7*, *Exhibit 9*.

136.    On or about June 29, 2016, Attorney Bill Behrens of DLF received a phone call from Sandra of Citi who notified Attorney Behrens that Citi had received the Response to Request #1.

25

137.   Citi was in receipt of any and all information and documentation requested by and through Request #1 as of June 17, 2016. See *Exhibit 7; Exhibit 9.*

138.   At no point following June 17, 2016 until September 26, 2016 when Citi, by and through by and through Jonathan Gibby of Reimer, sent Request #2, did Citi request any missing, corrective, additional, or supplemental information from Plaintiff regarding the Application that had not previously been provided to and their receipt acknowledged by Citi. See *Exhibit 9; Exhibit 16.*

139.   One Hundred and One (101) days lapsed between Plaintiff's submission of additional, supplement, corrective, or missing information or documentation regarding the Application on June 17, 2016 and Citi's next request for further additional, supplement, corrective, or missing information or documentation. See *Exhibit 9; Exhibit 16.*

140.   Given the fact that if the Application was, in fact, complete on or about June 17, 2016, a review of the Application for eligibility within thirty (30) days would have been required, it is clear that reasonable diligence would *at a bare minimum* require that a review of such application for completeness be completed at least some point prior to the thirty (30) day deadline to respond as to eligibility and that Citi failed to perform such a review for completeness of the Application in a reasonably diligent manner.

141.   That is, a servicer cannot even hope to comply with their obligation to make a determination as to a borrower's eligibility for loss mitigation options if they do not even perform a bare bones level of a review of a loss mitigation application

26

sufficient to at least determine whether it is complete and to subsequently request any missing, corrective, additional, or supplemental information if incomplete.

142.  Citi's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Application, as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

143.  Citi's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

144.  As a result of Citi's actions, Citi is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: AGAINST CITI
## VIOLATION OF 12 C.F.R. §1024.35

### [Failure to send written acknowledgment of receipt of NOE #2 within five (5) business days]

145.  Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

146.    12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

147.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

148.    12 C.F.R. § 1024.35(d) provides "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

149.    On or about September 1, 2016, Plaintiff, by and through DLF, sent NOE #2 to Citi via Certified U.S. Mail [Receipt No. 7016 0340 0000 9159 6890]. See *Exhibit 13.*

150.    NOE #2 met the definition of a notice of error for the purposes of 12 C.F.R. §1024.35 pursuant to 12 C.F.R. §1024.35(a). See *Exhibit 13.*

151.    Plaintiff sent NOE #2 to the address Citi designated for the receipt of notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 13.*

152.    Citi received NOE #2 on or about September 6, 2016. See *Exhibit 14.*

153.    Citi did not send any written notice from Citi acknowledging receipt of the NOE #2 within five (5) days, excluding legal public holidays, Saturdays, and

Sundays, of September 6, 2016.

154.    To date, Plaintiff has not received any written notice from Citi acknowledging their receipt of the NOE #2.

155.    Citi's actions committed a willful, clear, and material violation of 12 C.F.R. §1024.35(d) in failing to provide an acknowledgment to NOE #2 in compliance with the express requirements thereof.

156.    Citi's actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights

157.    As a result, Citi is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

<u>COUNT FIVE: AGAINST CITI</u>
<u>VIOLATION OF 12 C.F.R. §1024.35</u>

<u>[Failure to properly respond to or otherwise perform a reasonable investigation into an error alleged by and through NOE #2]</u>

158.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

159.    12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

29

160. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

161. 12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

162. On or about September 1, 2016, Plaintiff, by and through DLF, sent NOE #2 to Citi via Certified U.S. Mail [Receipt No. 7016 0340 0000 9159 6890]. See *Exhibit 13*.

163. NOE #2 met the definition of a notice of error for the purposes of 12 C.F.R. §1024.35 pursuant to 12 C.F.R. §1024.35(a). See *Exhibit 13*.

164. Plaintiff sent NOE #2 to the address Citi designated for the receipt of notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 13*.

165.   By and through NOE #2, Plaintiff alleged that Citi committed one (1) error pursuant to 12 C.F.R. §1024.35(b)(11) in failing to evaluate the Application for all loss mitigation options available to Plaintiff and provide written notice stating which loss mitigation options, if any, Citi would offer to Plaintiff in violation of 12 C.F.R. §1024.41(c)(1). See *Exhibit 13.*

166.   Citi received NOE #2 on or about September 6, 2016. See *Exhibit 14.*

167.   Citi sent Plaintiff the Response to NOE #2, on or about September 29, 2016. See *Exhibit 17.*

168.   It is clear that Citi failed to respond to the alleged error by and through the Response to NOE #2 and to otherwise perform a reasonable investigation into the error alleged by and through NOE #2 because had such a reasonable investigation been performed it would have been unmistakably apparent that:

(a) The Streamlined HAMP #1 was not a loss mitigation program offered pursuant to a review of the Application as required by and in compliance with the requirements of 12 C.F.R. § 1024.41(c) as it clearly states "[the Plaintiff] still [has] an opportunity to be evaluated for an even lower monthly payment under HAMP… To be reviewed for [this] option [the Plaintiff] must submit an Initial Package no later than 09/14/2016."

(b) The Streamlined HAMP #1 was mailed fifty-nine (59) days after Plaintiff submitted the Response to Request #1 which would have been a violation of 12 C.F.R. § 1024.41(c)(1) regardless as such an offer, if even relevant, which it is not, would have had to had been sent twenty-nine (29) days earlier.

See *Exhibit 17.*

169.   At no point does Citi, by and through the Response to NOE #2, explain why Citi failed or refused to provide a response to the Application on or before July 17, 2016 or why the Streamlined HAMP #1 advises Plaintiff to submit an "Initial

31

Package" by September 14, 2016 when Plaintiff's Application had been pending since on or before June 17, 2016. See *Exhibit 17*.

170. Based upon the foregoing, it is clear that Citi failed to conduct a reasonable investigation in the errors alleged by and through NOE #2.

171. Citi's actions, in failing to provide a proper response to NOE #2 in compliance with the express requirements of 12 C.F.R. §1024.25(e)(1), constitute a willful, clear, and material violation of 12 C.F.R. §1024.35(e).

172. Citi's actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights

173. As a result, Citi is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**COUNT SIX: AGAINST CITI**
**VIOLATION OF 12 C.F.R. §1024.35**

**[Failure to send written acknowledgment of receipt of NOE #3 within five (5)**
**business days]**

174. Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

175. 12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

32

176.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

177.    12 C.F.R. § 1024.35(d) provides "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.

178.    Plaintiff, by and through NOE #3, alleged that Citi committed an error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to conduct a reasonable investigation of and properly respond to NOE #2 in violation of 12 C.F.R. § 1024.35(e). See *Exhibit 23*.

179.    NOE #3 met the definition of a notice of error for the purposes of 12 C.F.R. §1024.35 pursuant to 12 C.F.R. §1024.35(a). See *Exhibit 23*.

180.    Plaintiff sent NOE #3 to the address Citi designated for the receipt of notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 23*.

181.    Citi received NOE #3 on or about October 28, 2016. See *Exhibit 25.*

182.    Citi did not send any written notice from Citi acknowledging receipt of the NOE #2 within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of October 28, 2016.

183.    To date, Plaintiff has not received any written notice from Citi acknowledging their receipt of the NOE #3.

184.    Citi's actions committed a willful, clear, and material violation of 12

33

C.F.R. §1024.35(d) in failing to provide an acknowledgment to NOE #3 in compliance with the express requirements thereof.

185.    Citi's actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights

186.    As a result, Citi is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT SIX: AGAINST CITI
## VIOLATION OF 12 C.F.R. §1024.35

### [Failure to properly respond to or otherwise perform a reasonable investigation into an error alleged by and through NOE #3]

187.    Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten.

188.    12 C.F.R. §1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

189.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

190.    12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower

and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

191.    On or about October 24, 2016, Plaintiff, by and through DLF, sent NOE #3 to Citi via Certified U.S. Mail [Receipt No. 7016 1970 0000 5068 8644]. See *Exhibit 23*.

192.    NOE #3 met the definition of a notice of error for the purposes of 12 C.F.R. §1024.35 pursuant to 12 C.F.R. §1024.35(a). See *Exhibit 23*.

193.    Plaintiff sent NOE #3 to the address Citi designated for the receipt of notices of error pursuant to 12 C.F.R. §1024.35(c). See *Exhibit 23*.

194.    Citi received NOE #3 on or about October 28, 2016. See *Exhibit 25.*

195.    Plaintiff, by and through NOE #3, alleged that Citi committed one (1) error pursuant to 12 C.F.R. § 1024.35(b)(11): An error under 12 C.F.R. § 1024.35(b)(11) for in failing to conduct a reasonable investigation of and properly respond to NOE #2; in violation of 12 C.F.R. § 1024.35(e). See *Exhibit 23*.

196.    On or about November 11, 2016, Citi sent Plaintiff the Response to NOE

#3. See *Exhibit 32*.

197.    Enclosed with the Response to NOE #3 were:

(a) Correspondence dated October 24, 2016 acknowledging receipt of the Response to Request #2;

(b) A copy of Streamlined HAMP #2. See *Exhibit 30*.

See *Exhibit 30*.

198.    The Response to NOE #3 failed to address the error alleged by and through NOE #3 merely stating that "as of October 24, 2016, [the Plaintiff's] file was submitted for underwriter review." See *Exhibit 30*.

199.    It is clear that Citi failed to perform a reasonable investigation into the alleged error because had such a reasonable investigation been performed it would have been unmistakably apparent that:

(a) Streamlined HAMP #2 was not a loss mitigation program offered pursuant to a review of the Plaintiff's loss mitigation application in accordance with the requirements of 12 C.F.R. § 1024.41(c) as it clearly states "[the Plaintiff] still [has] an opportunity to be evaluated for an even lower monthly payment under HAMP…To be reviewed for [this] option [the Plaintiff] must submit an Initial Package no later than 11/30/2016" and thereby any reference to such is irrelevant as it similarly was for the Streamlined HAMP #1 in regards to the Response to NOE #2 (such confounding response being the purpose of NOE #3).

See *Exhibit 13; Exhibit 17; Exhibit 23; Exhibit 26; Exhibit 30*.

200.    Citi, by and through the Response to NOE # 3, again wholly fails to explain why Citi did not provide a determination as to Plaintiff's eligibility for loss mitigation options, pursuant to a review of the Application, on or before July 17, 2016 as alleged in NOE #2, and subsequently in NOE #3, instead merely providing a copy

of Streamlined HAMP # 2 without acknowledging that as of the date of the Response to NOE #3, Citi had not completed a review of the Application. See *Exhibit 13; Exhibit 17; Exhibit 23; Exhibit 26; Exhibit 30.*

201.   At no point in the Response to NOE # 3 does Citi directly address the error alleged by and through NOE #3, instead merely stating that "as of October 24, 2016 [the Plaintiff's] file was submitted for underwriter review." See *Exhibit 23; Exhibit 30.*

202.   Based upon the foregoing, it is clear that Citi failed to conduct a reasonable investigation in the errors alleged by and through NOE #3.

203.   Citi's actions, in failing to provide a proper response to NOE #3 in compliance with the express requirements of 12 C.F.R. §1024.25(e)(1), constitute a willful, clear, and material violation of 12 C.F.R. §1024.35(e).

204.   Citi's actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights

205.   As a result, Citi is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT SEVEN: AGAINST REIMER
## VIOLATION OF THE FDCPA, 15 U.S.C. §1692k

206.   Plaintiff restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 78 in their entirety, as if fully rewritten.

207.   Reimer took the actions described hereinabove and specifically, on or

37

about July 8, 2016 initiated the Foreclosure in an attempt to collect a debt represented by the Loan with full knowledge and notice of the Application. See *Exhibit 9.*

208.   Reimer violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt.

209.   Reimer violated 15 U.S.C. §1692(e)(5) when it took an action - to initiate the Foreclosure—that cannot legally be taken as Plaintiff had submitted a facially complete, if not complete, loss mitigation application prior to the filing of the Foreclosure. See *Exhibit 9.*

210.   Reimer violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

211.   Reimer violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt.

212.   As pled, *supra*, Plaintiff has been harmed by, and continues to suffer from harm resulting from, the unfair and deceptive practices of Reimer in initiating the Foreclosure despite having actual or constructive knowledge and notice of the fact that Caliber was in possession of a facially complete, if not complete loss mitigation application.

213.   Due to the filing of the Foreclosure in violation of federal law, Plaintiff was compelled to retain counsel to defend the Foreclosure which Reimer wrongfully initiated against Plaintiff at the behest of Citi.

214.   Plaintiff has exercised all reasonable options at their disposal to rectify

the aggrieving situation, prior to filing the instant proceeding.

215.    Reimer's conduct has caused Plaintiff to suffer great emotional distress driven by the fear that they might lose their Property, their family home, and be forced to leave the Property, his home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the entry of judgment in their favor and against Citi as follows:

(a) A finding that Citi breached 12 C.F.R. §§1024.35 and 1024.41 multiple times as alleged in Count One through Count Six;

(b) Awarding Plaintiff statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every violation of Regulation X contained in Count One through Count Six;

(c) Awarding Plaintiff actual damages in an amount to be determined at trial;

(d) Awarding Plaintiff costs and reasonable attorneys' fees; and,

(e) For such other and further relief this Court may deem just and proper.

**WHEREFORE**, Plaintiff prays for the entry of judgment in their favor and against Reimer as follows:

(a) Finding that Reimer violated the FDCPA;

(b) Awarding Plaintiff statutory damages in the amount of One Thousand Dollars ($1,000.00);

(c) Awarding Plaintiff actual damages in an amount to be determined at trial;

(d) Awarding Plaintiff costs and reasonable attorneys' fees; and,

(e) For such other and further relief this Court may deem just and proper.

39

Respectfully submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
THE DANN LAW FIRM CO., L.P.A.
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
THE DANN LAW FIRM CO., L.P.A.
*Attorneys for Plaintiff*